# CHARLESTON.

B. WALKER PETERSON *et al.* v. M. M. McINTIRE *et als.*

Submitted September 6, 1922.  Decided September 12, 1922.

EQUITY—*Courts of Equity Will Not Take Jurisdiction to Ascertain Whether Complaining Party Has Cause of Action But Only Where He Shows His Rights Are Being Infringed Upon and There is Recognized Ground for Going Into Equity for Vindicating Such Rights.*

A court of equity will not take jurisdiction to ascertain whether or not a complaining party has a cause of action, but will only exercise its powers in behalf of a party complaining when he shows that he has rights which are being infringed upon by his adversary, and that there is some recognized ground for going into equity for the purpose of vindicating such rights.

Certified from Circuit Court, Wetzell County.

B. Walker Peterson and others against M. M. McIntire and another. Demurrer to plaintiffs' bill and amended bills overruled and case certified here to test the propriety of that ruling.

*Reversed; Demurrer sustained.*

*Hall & Hall,* for plaintiffs.

*Larrick & Lemon,* for defendants McIntire and others; *C. Powell* and *Kemble White,* for defendant South Penn Oil Co.

RITZ, JUDGE:

The question involved on this certificate is the propriety of the ruling of the circuit court upon the demurrer to the plaintiffs' bill and amended bills.

Plaintiffs filed an original and three successive amended and supplemental bills. After the final amendment the demurrer of the defendants was overruled, and the case certified to this court to test the propriety of that ruling.

The bills allege that the plaintiff, B. Walker Peterson, was in 1892 the owner of a tract of something over four thousand acres of land, situate in Wetzel County, West Virginia, being the residue of a larger tract of twelve thousand acres known as the Fox Survey; that in that year he, together with his co-plaintiff, his wife, executed to the defendant South Penn Oil Company a lease of said lands for the purpose of producing the oil and gas therefrom; that shortly after the execution of said lease said South Penn Oil Company began drilling upon said land, and has been producing oil therefrom ever since, which, by the terms of said lease, has continued the same in full force and effect; that there is a tract of 19.67 acres, part of the four thousand acres, situate near the southern boundary thereof, and that subsequent to the making of the oil and gas lease aforesaid plaintiffs conveyed the coal under this 19.67 acres to one Virgil L. Highland, Trustee; that at the time of this conveyance the said 19.67-acre tract was surveyed and the boundaries thereof definitely ascertained; that subsequent to this conveyance the plaintiff sold the surface of said 19.67-acre tract

to one W. T. Price, reserving from said conveyance the oil and gas in said land, and that the plaintiffs are still the owners of such oil and gas; that there is also a tract of sixty-five and three-fourths acres, part of the larger tract of over four thousand acres covered by the oil and gas lease, located to the east of the 19.67-acre tract, which the plaintiffs, subsequent to the making of the oil and gas lease, conveyed away, reserving, however, to themselves one-half of the royalties provided to be paid under the oil and gas lease, and that the defendant M. M. McIntire has become the owner of this sixty-five and three-fourths acres, with the exception of the one-half of the oil and gas royalties as aforesaid. The plaintiffs allege that shortly after they made the deed to Highland for the coal under the 19.67-acre tract rumors were conveyed to them that there were some oil wells on this tract of land drilled by the defendant South Penn Oil Company, from which they were not receiving the royalties; that upon these rumors coming to their notice they had their attorney and their agent, as well as an engineer, make an investigation to determine whether or not such was the case; that the said agents located definitely the 19.67-acre tract, and reported that there were two wells drilled thereon which were up on a hillside, and which they were informed were marked "M. M. McIntire Nos. 4 and 5," but that said agents did not go to said wells to see how they were marked. Plaintiffs also aver that they do not believe they ever received any part of the royalty on the oil from these two wells; that they are not certain about this, but that that is their information; they further aver that they do not know why their lessee, the South Penn Oil Company, has not delivered to them the royalty on the oil from these two wells, if, in fact, such is the case, and they call upon the court to ask the oil company why it has not kept its contract. In one of the amended bills the plaintiffs allege that on further investigation they are not certain whether one of the wells is on any lands in which they are interested. They show that the boundaries of their lands are definite and certain, but notwithstanding this they are unable to tell whether

one of these wells is within their boundary. In fact, the allegation is that their best judgment is that it is not, but they ask the court to find out about this for them, and to give them such relief in regard to this well as they may be entitled to after the court makes this investigation. As to the other well, there is also an allegation that notwithstanding the certainty and definiteness of the location of their lines, they do not know whether it is on the 19.67-acre tract, or the sixty-five and three-fourths-acre tract, but that it is on one or the other of these two tracts, and they ask the court to find out for them which tract it is on and let them know, and to give them such relief in regard to it as they may be entitled to. The allegations of the bill make it clear that there is no confusion about the boundary line, and that there is no uncertainty as to the location of the various tracts of land, and, of course, the most casual investigation would inform the plaintiffs which of the tracts of land these wells are on. They pray in their several bills that the defendants South Penn Oil Company and Eureka Pipe Line Company be required to account to them for the royalty oil from these two wells if the court should find, upon investigation, that they are entitled to it, or to such part of it as it turns out they may be entitled to. They aver that the defendant M. M. McIntire has no title papers covering any part of the 19.67 acres, and so far as they know is making no claim whatever to any part thereof, or to any interest therein, but they pray that in case the court finds out she is making any such claim, that the same be cancelled as a cloud upon their title to this tract of land.

This statement of the matters in the several bills sufficiently indicates that the desire of the plaintiffs is that the court act as their business agent and conduct for them such investigations as they should have conducted for themselves before instituting any suit. Upon the allegations of the bills that there is no conflict in the title, that there is no confusion of boundaries, that the location of plaintiffs' land is definite and certain, there is no reason in the world why the plaintiffs should not know which tracts of land these wells are

located upon, and have informed the court, instead of ask-
ing the court to find out and inform them.  The allegations
in the bills as to one of the wells is that in all probability
the plaintiffs have no interest in it, but in order to be sure
that their rights are protected they ask the court to make
an investigation for them to determine whether or not this
well is or is not upon their property.  As to the other well,
they express uncertainty as to whether it is on a tract of
land in which they own all of the oil, or on a tract in which
they only own one-half, and they ask the court to find out
about this for them and protect their interest after making
an investigation.  They also aver that they do not know
certainly whether they have received the royalty oil from
these wells or not, but their impression is that they have not.
However, they ask the court to find out about this for them,
and if they have, of course, they have no complaint; but if
they have not, they want the amount thereof decreed to
them, should it turn out that the wells are on their lands.
It will thus be seen that in these bills there is absolutely no
certainty about the rights of the plaintiffs, nor is there any
certainty about whether or not they have any cause of com-
plaint.

The function of courts of equity is to adjust real conten-
tions existing between parties, and to grant relief where a
grievance is shown to exist, and not to find out whether there
is a grievance, and particularly is this true where it is shown
by the allegations of a bill that there is no difficulty in the
way of knowing all of the facts if the parties exert even the
most casual effort in their own behalf.

As to whether or not equity would have jurisdiction to
determine any controversy which may exist, if it is found
that these wells are upon the plaintiffs' land, and that the
royalties therefrom have not been paid to them, we need not
determine.  Before a court of equity can be called upon to
exercise its jurisdiction in behalf of a complainant, he must
show what the subject-matter of his complaint is, and his
interest therein, and that he is being deprived of this inter-
est, or injured in some way in connection therewith.  In

this case, the pleadings do not show what the interest of the plaintiffs in the two wells is, nor do they aver that they are being· deprived of that interest.

· We are of opinion that because of the failure of these pleadings to set ·up a state of facts by certain averments which would entitle the plaintiffs to relief, the demurrer thereto should have been sustained, and we answer the question certified accordingly.

<em>Reversed; Demurrer sustained.</em> ·